Filed 2/25/13In re Darlene O.. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re DARLENE O., a Person Coming Under the Juvenile Court Law. | B241664 (Los Angeles County Super. Ct. No. CK82365) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. KELSEY R., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Jacqueline Lewis, Juvenile Court Referee.  Affirmed.

Cristina Gabrielidis Lechman, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Stephen D. Watson, Associate County Counsel, for Plaintiff and Respondent.

_____

Kelsey R. (mother) appeals the juvenile court order terminating parental rights to her three-year-old daughter, Darlene O. Mother maintains that the juvenile court erred in concluding that she had failed to establish that the so-called "beneficial-relationship" exception to termination of parental rights applied to the circumstances of this dependency proceeding. Finding no error, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Darlene was born in September 2009 to 16-year-old mother, a dependent of the juvenile court; Darlene resided with mother in the latter's foster care placement. In the early months of Darlene's life, mother attended school during the day and picked Darlene up from daycare after school. On three separate occasions, mother failed to pick Darlene up from daycare, and returned late to her foster home. The fourth time mother failed to pick Darlene up, she did not return to the foster home. Her foster mother filed a missing person report, and on May 20, 2010, the Department of Children and Family Services (DCFS) filed a petition on Darlene's behalf, alleging neglect and failure to provide under Welfare and Institutions Code[1] section 300, subdivision (b) and (g).

At the detention hearing, the juvenile court found a prima facie case that Darlene was described by section 300. The court removed Darlene from mother's custody and ordered her detained. Mother was granted reunification services and monitored visitation a minimum of three times a week. The court also ordered a psychotropic medication evaluation, drug testing, individual counseling and parenting classes.

Aside from mother's negative drug tests, she did not seem to benefit greatly from reunification services. Her foster mother described her overall behavior as childish; she did poorly in school, flaunted her curfew and went missing from her placement. Her visits with Darlene were sporadic, and she lacked appropriate parenting skills. For instance, when Darlene cried, mother got frustrated and would simply walk away from the child.

---

[1] Further statutory references are to this code.

At the adjudication hearing, mother pled no contest to the petition. The court declared Darlene a dependent and ordered her placed in foster care. Mother signed a disposition plan that including parenting classes, individual counseling, and a psychiatric evaluation, as well as monitored visitation. The court admonished mother that she had a short period of time within which to reunify with her young daughter, and set the six-month review hearing for February 25, 2011.

In an October 19, 2010 interim report, the social worker noted that mother had reunified and was living with her own mother. However, she was not obeying her mother's rules, was arriving home late at night, and had frequent angry outbursts. The interim report also stated that mother was appropriate during visits with Darlene, but continued to do poorly in school.

The Status Review Report for the February 25, 2011 six-month review hearing reported mother's partial compliance with the case plan. Mother did not attend parenting classes, did not provide a progress report from her psychiatrist, and continued to miss visits with Darlene. Mother reportedly seldom hugged or kissed Darlene during visits, and hardly interacted with the child. Darlene did not appear to be bonded with mother, and did not seek mother's attention. Neither did mother call Darlene's foster mother to learn how she was doing, nor call to schedule visits, or accompany her own mother in picking up or dropping off Darlene. However, mother had not run away from home in the previous two months, had attended school regularly and was taking her medication. Consequently, the court ordered reunification services to continue, and informed mother that the services would be terminated if Darlene could not be returned to her care at the twelve-month review hearing.

In a Status Review Report dated July 21, 2011, DCFS reported that mother continued to reside with her mother, but that their relations were strained. Mother refused to take her medication at times, left home without notifying anyone of her whereabouts, and missed visits with Darlene. Mother had violent episodes with her own mother in front of younger siblings, frightening them. She continued to not take responsibility for Darlene's transportation, allowing her mother to pick up and drop off

3

Darlene without accompanying her. She sometimes missed visits with Darlene in order to spend time with her friends.

On August 2, 2011, mother moved out of the maternal grandmother's home and into youth transitional housing. Mother's therapist reported that mother was struggling with life skills, such as going shopping for food and cooking for herself.

At the contested twelve-month review hearing held on September 27, 2011, the juvenile court remarked, "For the court to continue reunification the court has to find that there is a substantial probability of return. The court has to find that the mother has consistently and regularly contacted and visited with the child. I can't. That the mother has made significant progress in resolving the problems that led to the removal of the child. I can't. And that the mother has demonstrated the capacity and ability to complete the objectives of the treatment plan and to provide for the child's safety, protection, physical and emotional health and special needs. I can't make any of those findings today." The court then terminated mother's reunification services and set a section 366.26 hearing for January 24, 2012. The court identified adoption as the goal for Darlene's permanent placement, and ordered DCFS to prepare an adoptive home study.

As of January 24, 2012, the time of the originally scheduled section 366.26 hearing, Darlene had been living in the home of Leticia O. and Luis C., her prospective adoptive parents, for 20 months, and an adoption home study had been completed and approved. Leticia O. and Luis C. appeared capable of meeting all of Darlene's needs, were providing appropriate care, supervision, stability and safety, and were committed to adopting Darlene.

Mother requested a contested section 366.26 hearing, to establish that mother "has maintained contact with her child, and it would be detrimental to terminate parental rights." The court set the contested hearing for April 13, 2012.

On that date, DCFS reported that, of a total of 27 possible visits between January 24, 2012 and April 13, 2012, mother visited Darlene a total of three times. DCFS concluded that because mother failed to maintain regular contact with Darlene, no

4

parent-child bond had developed, nor did Darlene exhibit any other form of attachment to mother.

Mother's attorney acknowledged that mother had not maintained consistent visitation throughout the dependency, but maintained that mother had "made a lot of progress in her own life" and had worked "to better[] her own life and get[] her own life stabilized. She's worked hard and has a lot to be proud of."

Both DCFS and Darlene's counsel recommended that mother's parental rights be terminated.

The juvenile court found by clear and convincing evidence that Darlene was adoptable, stating, "Not only is she universally adoptable, but she's residing in a home that wishes to adopt her and has an approved home study." The court found no exception to the termination of parental rights, stating, ". . . there has not been regular and consistent contact. [B]ased on the fact that there hasn't been any regular and consistent contact, there's no real relationship between [mother] and her daughter. [¶] And, therefore, the Court cannot find that there is such a relationship with the mother [] that outweighs the benefit to Darlene having a stable and permanent home." The court terminated mother's parental rights to Darlene, an order mother challenges on appeal.

DISCUSSION

On appeal, mother maintains that the trial court erred in finding that the beneficial-relationship exception to termination of parental rights did not apply in this case.

"[W]hen the court has not returned an adoptable child to the parent's custody and has terminated reunification services, adoption becomes the presumptive permanent plan . . . ." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350.) To avoid termination of parental rights the parent must prove one of the exceptions provided by section 366.26, subdivision (c)(1)(A) and (B)(i)-(vi). Mother relies on the beneficial-relationship exception to argue that the juvenile court erred in terminating her parental rights. That exception provides that the parental rights of an adoptable child will not be terminated if the parents establish that termination would be detrimental to the child because "[t]he

5

parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  A beneficial relationship is one that "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents."  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Mother's attorney presented no evidence and made no argument to show that mother had either maintained regular visitation and contact with her daughter, or that severing the relationship would be detrimental to the child.  To the contrary, the evidence before the court established that mother's visitation and contact with Darlene throughout the dependency was irregular, and indeed minimal by the time of the section 366.26 hearing.  Moreover, the interactions between mother and Darlene during the visits did not demonstrate a parent-child bond:  Mother seldom hugged or kissed Darlene during visits, interacted very little with her, and provided scant attention.  Darlene did not appear to be bonded with mother and did not seek mother's attention.  In short, because mother did not occupy a parental role in Darlene's life, mother failed to prove that Darlene "would be greatly harmed" by severing the relationship.  (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)

On appeal, mother also argues that "it is [] vital to Darlene that [mother] remain in her life in order to 'break the chain'" of abandonment "which plagued [mother] and would no doubt be passed on to Darlene should she never the opportunity to see her mother again," and that open adoption, long-term foster care or guardianship would be more beneficial to Darlene than simply terminating mother's parental rights.  In support of this contention, mother cites several web-based articles, which may or may not support her contention.  In any event, this argument is properly addressed not to the courts but to the Legislature; in the absence of an applicable exception, the juvenile court was mandated by section 366.26, subdivision (c)(1) to "terminate parental rights and order the child placed for adoption."

DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ARMSTRONG, Acting P. J.


We concur:


MOSK, J.


KRIEGLER, J.


7